The People *ex relatione* the City of Chicago *v.* The Trustees of the Illinois and Michigan Canal.

### APPLICATION FOR A MANDAMUS.

The original plan of making the south branch of the Chicago River a part of the Illinois and Michigan Canal having been abandoned, it is not the duty of the trustees to condemn and appropriate blocks fourteen and fifteen in the city of Chicago for the purpose of forming a basin, at the confluence of the north and south branches of the river.

The facts necessary to a full understanding of the application for a mandamus, as well as the laws upon which the application was founded, are stated in the opinion of the court.

S. S. Hayes, G. Goodrich, J. H. Collins, and D. McIlroy, for the application.

J. N. Arnold, *contrà*.

Treat, C. J. The 44th section of the "Act for the construction of the Illinois and Michigan Canal," approved January 9th, 1836, provided: " The said canal shall commence at or

near the town of Chicago, on canal lands, and shall terminate near the mouth of the Little Vermillion in La Salle county, and on land owned by the State." The 2d section of an act to amend the foregoing act, approved March 2d, 1837, provided: " That it shall be the duty of the commissioners authorized to be elected by this act, to proceed immediately and without delay, to the prosecution and final completion of said canal, upon the plan set out by the commissioners in the year 1836, in all respects." The 7th and 8th sections of the "Act to provide for the sale of certain canal lands, and for other purposes," approved July 21st, 1837, are as follows: Section 7, " The canal commissioners are authorized to enlarge the natural basin at the north and south branches of the Chicago River, so as to render the same as useful and convenient as possible; and block seven, of the canal lots in the city of Chicago, shall be reserved from sale for the purpose of exchanging the same for block number fourteen, which will be required to be removed in the enlargement of the said basin; and the said commissioners are hereby required to cause the aforesaid block, number fourteen, to be appropriated for the purpose aforesaid, and to proceed to obtain the title to the same, in the manner provided by law for obtaining lands or materials for the use of the canal." Section 8, " When the board of appraisement shall appraise the said block fourteen, they shall also appraise the aforesaid block seven, and if the owners of block fourteen will take in exchange for the same, block number seven, at the appraisement thereof, the canal commissioners are authorized to make the exchange, taking from the said owner a sufficient conveyance for said block to the State, and giving to such owner a certificate of purchase for block seven, stating therein the facts of the transaction ; and if block seven shall be appraised to more than block fourteen, the said owner shall be required to pay the difference in a reasonable time, to be fixed by the canal commissioners ; and upon such payment being made, the said owner shall be entitled to a patent for the same ; but if said block shall be valued to less than block fourteen, or the same sum, he shall be entitled to a patent, upon executing the conveyance aforesaid. If the difference in value shall be in favor of the said owner, the canal commissioners shall pay the same out of the canal fund ; but if no such agreement is made, as herein contemplated, the aforesaid block fourteen shall, nevertheless, be obtained and appropriated, as herein provided, and block number seven shall be subject to sale as other lots in Chicago now are."

By the provisions of the "Act to provide for the completion

25*

of the Illinois and Michigan Canal, and for the payment of the canal debt," approved February 21st, 1843, the canal and all the unsold lands and lots belonging to the canal fund, were granted to the trustees of the Illinois and Michigan canal, as security for the loan authorized by that act, for the purpose of completing the canal. The 8th section declares, that the trustees " shall possess all the powers and perform all the duties conferred upon the board of commissioners of the Illinois and Michigan Canal." The 13th section declares, that the " trustees, when appointed, are .hereby authorized to take possession of the said canal, lands, property, and assets, granted to them by this act, and proceed to complete the 'same. They are hereby authorized to make such changes and alterations of the original place of said canal as they may deem advisable, without reducing its present capacity, or materially changing its present location, having due regard to economy,' permanency of the work, and an adequate supply of water at all seasons." The same section requires the trustees, after the completion of the canal, to sell all the lands, lots, and water power granted to them by the act. The 18th section provides, that the act shall go into effect as soon as the full amount of the loan shall be subscribed, and the trustees be appointed ; and it repeals so much of the prior laws on the subject of the canal, as conflicts with the provisions of this act.

The 6th and 7th sections of the "Act to drain a marsh in Gross-point precinct, in Cook county, and for other purposes," approved March 3d, 1845, are as follows : Section 6, " The 7th section of an act to provide for the sale of certain canal lands, and for other purposes, approved July 21st, 1837, is hereby so amended as to authorize the trustees who may be appointed in pursuance of an act to provide for the completion of the Illinois and Michigan Canal, and the payment of the canal debt, approved February 21st, 1843, to cause block number fifteen, in the original town of Chicago, to be appropriated if they shall think proper for the same purpose as is block fourteen of said city, by virtue of said first-mentioned section. And the said commissioners or trustees shall proceed forthwith, to perfect the exchange of block fourteen aforesaid for block seven as contemplated by the said act, to which this section is an amendment; and also in like manner under the provisions of said act to obtain the title to said block fifteen." Section 7, "And the said commissioners or trustees are hereby further empowered to make any arrangement with the city of Chicago, or any individual, for the excavation in whole or in part of the canal basin referred to in the 7th section of the act first named,

as they may judge best and expedient; provided such excavation can be done without any expense to the State."

The trustees of the Illinois and Michigan Canal were appointed in May, 1845; and the canal property was conveyed to them in June of the same year.

At the June term, 1852, the city of Chicago presented a petition to this court, alleging that it was ready and willing to construct a commodious basin at the confluence of the north and south branches of the Chicago River, by the excavation of blocks fourteen and fifteen, without expense to the State; and praying that the trustees of the Illinois and Michigan Canal might be compelled by mandamus to cause those blocks to be condemned and appropriated for that purpose. The trustees dispensed with the issuing of an alternative mandamus, and filed an answer to the petition. It alleges in substance, among other things, that when the act requiring a basin to be constructed was passed, the plan was to tow canal boats along the banks of the south branch of the Chicago River, in which event a basin at its mouth would be necessary for the accommodation of canal boats; that the plan of using the south branch as part of the canal was deemed inexpedient, and abandoned, and the trustees had therefore declined to construct the basin; that the canal terminates four miles from the confluence of the two branches, and the trustees exact no tolls from, and have no control over boats in the south branch; that the south branch, from its mouth to the termination of the canal, is wide enough to enable canal boats to pass each other; that the construction of the basin is not necessary for the accommodation of canal boats, they being well accommodated in the river and its branches.

The cause is submitted to the court on a demurrer to the answer.

If the original plan of making the south branch of the Chicago River a part of the canal had been carried into effect, it might be the duty of the trustees to construct a basin at the confluence of the two branches, or condemn and appropriate blocks fourteen and fifteen for that purpose. The canal would then terminate at the place of the projected basin. The basin would be a part of the canal. Boats would pass directly from the canal into the basin. But the trustees have terminated the canal at another point. A basin at the confluence of the two branches, would now form no part of the canal. There would be no necessary connection between them. The basin would not even be an appendage of the canal. It would be a misapplication of terms to characterize it as a "canal basin."

Boats would have to pass four miles from the canal to reach the basin. The basin would not be under the control of the trustees. It would be subject to the regulations of the city. It would in fact be made for the benefit of Chicago and commerce generally; and not for the benefit of the canal, or the accommodation of those doing business upon it. It was never the design of the legislature that a basin should be constructed at the expense of the canal fund, which would have no immediate connection with the canal, and which would not be necessary for the purposes of the canal. The canal lands were granted to the State to enable it to open a canal between the navigable waters of Lake Michigan and the Illinois River. The same were not to be applied to the improvement of the harbor at Chicago, or to any other purpose not directly connected with the interests of the canal. The State seems to have acted upon this view, in all its legislation on the subject of the canal. The courts should not hold that it designed to divert any portion of this fund from its legitimate object, unless the intention to do so is clear and manifest. The primary object in requiring a basin to be constructed, was to promote the interests of the canal. The legislature acted upon the supposition that the canal would extend to the mouth of the south branch, and that the accumulation of boats at that point would render a basin necessary for their convenience and accommodation. This consideration induced the various provisions in reference to the basin. Such was, then, the plan for the construction of the canal, and that plan would have to be pursued unless changed by competent authority. But the trustees were expressly authorized to make such changes and alterations in the plan of the canal as they might deem expedient, so as not to reduce its capacity for business, or materially change its location, or increase the cost, or prevent an adequate supply of water. It is evident that the termination of the canal at Bridgeport, has not increased the cost of its construction. It is not pretended that the change has diminished the supply of water. There is nothing in the case to show, that it has reduced the capacity of the canal for the transaction of business. And from the lights before us, we are not inclined to hold that the change is material, or detrimental to the interests of the canal. The present canal accommodates the same line of transportation, and answers the same general purposes. It connects the waters of Lake Michigan with those of the Illinois River. Boats pass through it from the lake to the river. The only change is in the length of the canal. It receives boats from and discharges them into the south branch, instead of receiving them from and discharging

them into the Chicago River. There is no difficulty in boats passing up and down this branch, or remaining therein. For all practical purposes, there is canal navigation from the lake to the Illinois River. We are not prepared to say that the trustees violated their duty in so changing the plan of the canal, as to terminate it at Bridgeport instead of at the confluence of the north and south branches of the Chicago River. It follows, we think, that they are not bound to condemn and appropriate the blocks in question for the purposes of a basin. The provisions in reference to the basin must be understood in connection with the authority conferred on the trustees to change the plan of the canal. If the change of the canal rendered the excavation of this ground unnecessary for the purposes of a canal basin, then those provisions became inapplicable and inoperative. The direction to the trustees to appropriate these blocks was made in connection with authority to do another act, that would render the appropriation unnecessary; and when that authority was exercised and the act performed, the direction ceased to be obligatory. If the original plan had been carried out, the direction might have continued binding on the trustees. But under authority vested in them, a state of case has arisen that dispenses with its performance.

The demurrer must be overruled; and the application for a mandamus be denied.

*Application denied.*